## PEOPLE v. WOODRUFF.

### Cr. No. 516; October 21, 1899.

#### 58 Pac. 854.

**Embezzlement—New Trial—Identity of Defendant.**—Defendant was convicted of embezzlement, his identity being established by four witnesses, three of whom testified that he had a beard of about two weeks' growth at the time of the crime. Defendant asked a new trial, based on newly discovered evidence, tending to show that he had no beard, and filed several affidavits. In one of these affiant stated that another told him before the trial that he had committed the crime. Affiant did not make this alleged fact known until after defendant's conviction. This affidavit also seriously contradicted statements made upon defendant's preliminary examination. Held, that the affidavits contained nothing which rendered it probable that on a retrial of the case a different result would be reached.

APPEAL from Superior Court, Los Angeles County.

John Woodruff was convicted of embezzlement, and appeals from the judgment and an order denying his motion for a new trial. Affirmed.

J. N. Phillips and W. H. Shinn for appellant; Attorney General Ford for the people.

HAYNES, C.—John Woodruff was convicted of the crime of embezzlement, and appeals from the judgment and an order denying his motion for a new trial. The only ground presented for reversal is that the court erred in overruling his

said motion. The controverted question is the identity of the embezzler. Fetterman & Son were the proprietors of a livery-stable at Long Beach. On July 8, 1897, the senior partner was absent, and the son and his younger brother, a boy of fifteen, were in charge of the stable. A man, who was not known to either of them, called, and hired a pair of horses and a spring wagon to go to Redondo. The elder brother harnessed the horses and the younger brother, assisted by the stranger, greased the wagon. These things consumed about twenty minutes, and the stranger drove away, going, not to Redondo, but to Los Angeles, where he and another man disposed of the horses, wagon and harness. No inquiry was made by the livery-keeper as to the name or residence of the hirer. The defendant was arrested on the 3d of September, at Long Beach, the defendant's brother, Charles, being with him. The elder of the Fetterman boys testified on cross-examination that the man who got the team had at least two weeks' growth of beard on his face at the time he got the team, and the next time he saw him he was clean shaven, except that he had a mustache. The witness, however, further testified that he identified him by his eyes, his face, and general appearance, as well as his whiskers; that he was as positive as he could be of anything that defendant is the man who got the team. The younger brother testified that he was positive—had no doubt—that defendant was the man who got the team. He also testified upon cross-examination that the man had long whiskers, "had quite a whisker on his face"; that when he saw him after his arrest he knew he was the man that took the team; that on that occasion he picked him out of a crowd. J. M. Brown testified that he had known the defendant for two years, and saw him the day before he got the team at Long Beach, and talked with him; that he had a beard all over his face; that it was not long, but he had not shaven for some time. At the time the property was disposed of there was another man with the defendant, and they traded the spring wagon to Peter Varlo for a buggy, and Varlo identified the defendant positively as one of the men, and thought Charles Woodruff was the other. There were two men also at Meinhardt's horse market, where the remainder of the property was disposed of, one of whom was identified as the defendant. The defendant offered evidence tending to prove an alibi, and also that he did not wear whiskers or a full

beard, and that his brother shaved him on the 4th of July, at his father's house. Six witnesses testified to the fact that defendant wore a mustache, but no whiskers.

One of the grounds for a new trial, and the only one discussed, is that of newly discovered evidence. The trial was concluded on January 12, 1898. Six affidavits, besides those of the defendant, containing a statement of newly discovered evidence, were filed, and used in support of defendant's motion for a new trial. Except as hereafter noticed, these affidavits contained matters which were merely cumulative of the evidence touching the existence or absence of a beard. The only new fact in the affidavit of Janie Flint was to the effect that on the evening of July 9th Samuel Woodruff told her that he had been down to Long Beach, and had driven up from there to Los Angeles. She was examined as a witness for the defendant, and, judging from her interest in the defendant's case manifested in her testimony, it is remarkable that she should have failed to communicate this alleged fact to him or his counsel. The affidavit of Walter S. Humbert was to the effect that he was acquainted with both John and Samuel Woodruff prior to July, 1897; that on July 8th, about 5 o'clock P. M., he saw Samuel on Los Angeles street, near Third, driving a span of horses, one gray and one sorrel; that the team appeared tired and dusty, and that the defendant was not with him, and that he did not see them together that day; that he did not know of the arrest and trial of defendant until after his conviction, when he learned of it through the newspapers. Here we have a man passing along a busy street in the heart of a city of one hundred thousand inhabitants, with nothing to specially call his attention to the circumstance, who seven months afterward can describe the team and wagon driven by a man whom he has known a few months, and, more wonderful still, is willing to swear positively that it was on the eighth day of July, about 5 o'clock in the afternoon. The affidavit of Charles A. Woodruff was to the effect that on January 3, 1898 (about eight days before the trial began), Samuel Woodruff told him it was he, and not the defendant, who took the team from Fetterman's stable, and that defendant was innocent, and that he (affiant) did not tell anybody of said conversation until after defendant's conviction. If said deponent believed said statement alleged to have been made by Samuel Woodruff, and failed to

communicate it to the defendant, but remained silent, and permitted an innocent man to be convicted and the guilty man to escape, he is wholly unworthy of credit. Whether Samuel resembled his brother, ·the defendant, and wore a beard or not, could not well overcome the testimony of the defendant given upon his preliminary examination to the effect that on the morning of the 10th of July a man named Williams requested him to aid in selling the property, and that he did so, coupled with the fact that the day before he and another man were twice at Varlo's place, and there traded the wagon for a buggy, and ·was positively identified by Varlo as one of the two men. I see nothing in the affidavits that would render it probable that on a retrial of the case a different result would be reached: People v. Urquidas, 96 Cal. 240, 31 Pac. 52.

I advise that the judgment and order appealed from be affirmed.

We concur: Cooper, C.; Gray, C.

PER CURIAM.—For the reason given in the foregoing opinion the judgment and order appealed from are affirmed.